Buffin, J.
 

 It is to be observed that there is a mistake of fact in the petition as to the declarations in the decree, in which the errors are assigned. The decree does not deny the right of this defendant to deduct from his debt any sums due to him from the firm up to the execution of the deed. There was no declaration on that point, and could not be, because it was not in issue. If the defendant had made payments, undoubtedly he is entitled to credit for them. So, if mutual debts existed, constituting a set-off at the time of the assignment, the defendant is entitled to the benefit of them by an abatement of his debt^ro
 
 tanto.
 
 The law gave him the absolute right to use his counter claims by way of set-off and there is no equity to restrain him from such nse. No such declaration as that supposed in the petition would have been made, had the question arisen. But it did not, for the pleadings contain no allegation of such mutual dealings, but raise a very different question. In alleging the second error, there is also a mistake of fact. It supposes the decree to declare, that, as
 
 *200
 
 to certain debts of the firm, for which the defendant was surety, and for which there was no provision in the deed, ho could not claim a deduction for their amount. But the defendant set up no such claim in his answer, nor alleged that any such debts existed. It is plain that they did not: for the deed provides expressly for “ all other debts” being paid,
 
 pro
 
 rata, out of the surplus, if any. For these reasons, the petition would necessarily be dismissed, since the petitioner is confined to the causes assigned for the rehearing. But as it may be desirable to all parties to have a decision on the real controversy, and since, upon reconsideration, the Court is satisfied with the decree, it is thought best to dispose of it finally. .
 

 What the answer does state, is this : that there were debts for about $700, for which the defendant was surety, and which were not among the enumerated preferred debts, and fell into the last class of “other debts,” which would remain wholly unpaid, because of the deficiency of the fund ; and the claim. of the answer is that the defendant has the right of applying his debt to those demands, if he chooses.
 

 The answer raises the point in the case, fairly. It is, whether, in the view of a court of equity, the insolvent principal could assign the surety’s debt, subject, of course, to legal defenses existing at the time, for the purposes set forth in this deed, so as to conclude the surety ; or whether the latter has the absolute right of applying, as he chooses, the money, he owed, to any of the debts for which he was bound. As ageneral proposition, the equity of a surety is, evidently, that an insolvent principal shall not assign a debt the surety owes him, so as to throw a loss on the surety, by his being compelled to pay both debts. Hence, it is often said, that a surety, though he may not have paid the debt, for which he is surety, yet, has the rights of a creditor, and may use his liabilities as equitable set-offs against his debt, as against an assignee. But it is manifest, that this equity of the surety may be much varied by circumstances ; and to enable us to understand its nature, it may be well to look at it under different aspects. Now, although the surety is called a creditor, yet, he is not one
 
 *201
 
 in fact, even in the view of the court of equity. He is only so ideally, for the purposes of subrogation, and by that means defeat an assignment of his debt, which would divert it from his indemnity. Hence, if the surety be insolvent, as well as the principal, the surety has no equity in the matter, or, at all events, but a dormant one; for, the common creditor is not bound to let the surety have the benefit of his security, that he may use it in satisfaction of his own debt; but he has a right to keep it for the purpose of obtaining payment from either the principal or the surety, whichever shall first get effects. The surety’s liability, then, does not work an ex-tinguishment of his debt, but only gives him a right to insist that his debts shall not be so used as to make him a loser therebju That is his whole equity. If the ■ surety, then, be bound for but one debt of the principal, his own debt cannot be assigned, or, rather, the assignee will take it, subject to- his equity; that is, considering the equities of the parties upon their intrinsic force, unaffected by agreement express or implied. But if the surety be bound for several debts amounting together to more than his own debt, upon what principle can he, as an equity, claim the power of determining to which of those obligations his debt shall be applied? His debt still subsists, and is the property of the principal, and, as such, he may dispose of it as he will, provided only it be not so disposed of as not to exonerate the surety, on his liabilities, to the amount of it. But if the assignment be made for the purpose of paying one of those liabilities, the debt of the surety does the very thing to which the surety’s equity dedicated it. When the surety applies to the assignee of a bond over-due, for example, to- surrender it, the latter may reply, I acknowledge your equity, and have not interfered with it, but, in furtherance of it,. I took your bond in satisfaction of another executed by the same principal, and yourself as his surety. Would not that be a complete answer? Indeed, if the surety be considered to all intents a creditor to the amount of his liabilities, still, upon the acknowledged rule as to the right of applying payments, it would be the
 
 *202
 
 privilege of the principal, as a debtor, to designate the particular debt to be credited. There is no equity affecting that right.
 

 That is our case, except that this debt was assigned as a part of a common fund for the payment of many debts, for some of which this defendant was not the surety. It is admitted, that may make a difference ; for, the surety is entitled to the benefit of his whole debt for his indemnity. If this assignment embraced nothing else but the defendant’s debt, it being for the benefit of others as well as the defendant, the argument would be unanswerable. But, in fact, it formed but a small amount of a fund of about $22,000 — and for the debts secured in the first class, the defendant was the surety to the amount of upwards of $16,000, according to a schedule of those debts filed by the acting trustee. For the portion of his debt taken from him for the benefit of the common fund, it thus appears that the defendant was compensated, probably, tenfold; and his equity not to have a loss thrown on him by his principal, has been respected. By making the assignment of the debt with other things, and directing the application so that this surety gets from the aggregate fund more than he would from his debt, the assignment works no loss to him, but a gain. Upon the defendant’s original equity, then, he has now no right to exempt his debt from the operation of the assignment, because, as it stands, it was to his advantage. But his privity to the arrangement makes the case still stronger. Why did he not say at the time, my debt must be excepted out of the assignment ? The reply would have been, take your debt and make the most of it, .and then the other debts and effects will be conveyed to secure debts for which other persons are sureties. He made no such demand, but allowed a general assignment of all the debts, which is broad enough to cover his, and other property upon trusts for the payments of debts to a much larger amount than the fund, in a prescribed order, whereby he got much more than he would without the assignment. He, in truth, waived his equity for a compensation more than adequate; and he cannot, now, set
 
 *203
 
 it up in opposition to the provisions of the assignment, as to the order in which the debts are to be paid.
 

 The decree must, therefore, stand.
 

 Per Curiam, Rehearing refused.